HENRY C. POHLE *vs.* JAMES J. MCALEER, *Adm'r, et al.*

AUGUST 8, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This bill in equity was brought to enforce an agreement alleged to have been made by the complain-

ant and the respondent administrator's intestate during her life whereby the latter agreed to devise by her will certain real property to the complainant. After a hearing in the superior court a decree was entered denying and dismissing the bill of complaint, and from that decree the complainant has duly prosecuted an appeal to this court.

The bill alleges in substance that Zaletta M. Prew was the owner of certain real estate in the city of Providence in which complainant occupied a portion thereof as a tenant; that complainant and the owner during her life-time entered into a contract whereby he agreed to pay the mortgage interest, taxes and any and all charges against said real estate, and to make all repairs necessary for its upkeep; and that in consideration thereof the owner agreed to devise said real estate by her last will and testament to the complainant. The bill further alleges that complainant has fully complied with his part of the agreement; that the owner died in the city of New York on March 5, 1948 and no will has been located; that a petition for probate of her estate in New York by a public administrator stated that "there are no known heirs at the present time"; that respondent James J. McAleer was appointed by the probate court of Providence as administrator of her estate in Rhode Island; and that such administrator had filed petitions in said probate court for permission to collect rents from the tenants of the property, and also to sell the real estate in order to make a prompt settlement of the estate.

The complainant therefore prayed for both preliminary and permanent injunctions to restrain the collection of rents and the sale, conveyance or mortgaging of the real estate by the respondent administrator, and in effect requested specific performance by such administrator of the owner's agreement by way of having the real estate impressed with a trust in favor of complainant and by ordering the administrator to execute a good and sufficient

deed thereof to him. A decree *pro confesso* was entered against the heirs, if any, who had not filed answers. Answers were filed by the respondent administrator and certain respondents, who among other defenses pleaded the statute of frauds. The cause then proceeded to hearing on bill, answers, replication and proof.

The evidence for complainant was presented by himself, a sister-in-law of the deceased owner, and a friend of both the complainant and the owner. A general summary of their testimony tends to show the following material facts. The Mechanics National Bank of Providence in 1941 or 1942 threatened foreclosure of its mortgage on the property in question because the monthly payments thereunder were not being made; that after complainant's father died an arrangement was made with that bank to "pay $200.00 a month which would take care of the back interest and the common expenses"; that later a new mortgage and arrangement were made with the Plantations Bank, at which time the owner said: "Well, I want the same arrangement that I had with your Dad, that you are to have this property if anything should happen to me." According to complainant the owner did not then specifically agree to make her will in his favor but later he was given to understand that "she had it fixed up."

The complainant testified that his agreement was to collect rents, look after the property, and make the monthly payments to the bank of $248.16, which included mortgage, interest, insurance and taxes, and if the total rentals from other tenants were not sufficient for that purpose he was to make up the difference. He did not sign the mortgage or otherwise obligate himself in writing in that connection.

To corroborate his testimony he introduced two letters from the owner, one dated May 25, 1944 and the other April 21, 1945. Generally speaking these letters contained statements to the effect that she had the same

plans for complainant as she had for his father who had died; and that she had no intention of selling and wanted the property to go to complainant on her death. However, the details of her plans for complainant or his father are not specifically disclosed. It also appears therein that she refused to give a quitclaim deed to complainant as he had requested; that otherwise she indicated a desire to save money on the mortgage if possible; and that generally she wanted to retain the right to sell or not to sell.

The last letter also stated:

"I am enclosing the Third Installment of the 1944 Tax Bill for $227.38, and I hope you will be able to pay it on time, as you have done before, also the required payments on the mortgage, for it would be serious now to not live up to your word with the Bank."

None of the witnesses for complainant testified that the owner specifically bound herself to any agreement or mentioned the details thereof, but they corroborated complainant to the effect that by her statements she had given them to understand generally that she wanted complainant to have the property upon her death.

The respondent offered no witnesses and introduced only one exhibit. But he showed by cross-examination of complainant and his witnesses that the former in making monthly payments of $248.16 to the Plantations Bank as required by the mortgage actually collected $195 per month from other tenants; that he added $53 thereto for his own occupation of the grocery store; that from the time of the administrator's appointment complainant paid $85 per month in accordance with the fair rental value of the store as fixed by expert testimony in the probate court; and that his father previously had been obligated to pay $115 per month under a lease for the same store.

The respondent further pointed out that one of the letters relied on by complainant shows that the owner was enclosing $227.38 of her own money to enable complainant to pay the third installment of the 1944 tax bill; that the

letters make clear the owner's intent to retain the right to sell or keep the property as she desired; that complainant received other letters from the owner which were not presented by him in evidence; and that he failed to present any books of account or records showing the details of his handling of the property during the time he allegedly was performing the agreement.

The trial justice found that the complainant had not established by clear and convincing evidence the "substantial conditions of the parties, subject matter, consideration, time and part performance" of the alleged agreement so as to warrant the enforcement of an agreement to dispose of property in a particular way, citing *Spencer* v. *Spencer*, 25 R. I. 239, *Lawton* v. *Thurston*, 46 R. I. 317, and *Peckham* v. *Barker*, 8 R. I. 17.

We have examined the transcript and we do not find that the trial justice has misconceived the law or overlooked any material evidence. In this state it is recognized that in a proper case a bill in equity may be brought to enforce an agreement to dispose of property in a particular way. *Spencer* v. *Spencer, supra; Messier* v. *Rainville*, 30 R. I. 161. But the courts here as elsewhere generally look upon such a claim with suspicion and require that it be proved by clear and convincing evidence. *Peckham* v. *Barker* and *Lawton* v. *Thurston, supra.*

In the instant case there is a serious question whether the proof actually supports the allegations in the bill. The agreement as alleged therein literally called for payment by *complainant* of the mortgage interest, insurance and taxes. But complainant's own evidence showed that, with the exception of $53 representing his monthly rental as tenant of the grocery store, these charges were paid not out of his own money but entirely from moneys that he as agent had collected for the owner from other tenants, or which had been sent to him by the owner.

On the other hand if the agreement may be understood

according to complainant's testimony, rather than as alleged, there is admittedly an indication in the owner's letters that she wanted the complainant to have her property upon her death. However, nowhere in the letters or in the testimony of any witness is there evidence *binding* her to dispose of the property to the complainant and to nobody else. On the contrary there are expressions in the letters which disclose her intent not to give complainant a quitclaim deed and to reserve to herself against the bank and others both the ownership of the property and the right to sell or not to sell it before death, as *she* may have desired. This is not consistent with a knowledge that she was obligated by a specific agreement to dispose of it only to complainant. While the letters indicate that the owner had intended the same plan for complainant as she had for his father, the details of neither plan appear clearly in the bill or evidence so as to support specific performance.

At best there appears to be conflicting inferences as to what the alleged agreement, if any existed, required the owner and complainant respectively to do and whether the latter has shown the existence and details of such a binding agreement and his performance thereunder so as to warrant relief in the nature of specific performance. From an examination of all the evidence we cannot say that the trial justice was clearly wrong in finding that he had not proved these facts by clear and convincing evidence in accordance with the applicable law.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Wilson, Budlong & Clough, Wilford S. Budlong,* for complainant.

*James J. McAleer,* for respondents.